UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 4:16CR364 JAR(SPM) |
| MERWIN SMITH | ) ) ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION
# AND MEMORANDUM OPINION
# OF UNITED STATES MAGISTRATE JUDGE

This matter was referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to 28 U.S.C. §636(b).

## PROCEDURAL BACKGROUND

On July 17, 2016, Defendant Merwin Smith was stopped for a traffic violation by an officer with the City of Normandy Police Department and, after police discovered a gun at the scene, Smith was subsequently taken into custody. On August 17, 2016, Smith was charged in an indictment in this Court with one count of being a felon in possession of a firearm. *See* Doc. 2 (Redacted Indictment). Smith was arraigned before the undersigned on July 31, 2018. At the arraignment, defense counsel requested additional time to file or waive pretrial motions. After requesting and obtaining additional time to file pretrial motions, Smith filed a motion to suppress evidence and statements on November 26, 2018. *See* Doc. 25. On December 3, 2018, the United States filed a response resisting the motion. *See* Doc. 27.

On December 17, 2018, the undersigned held an evidentiary hearing on Smith's suppression motions. Smith was present with counsel and the United States was represented by Assistant United States Attorney Rodney Holmes. The United States offered testimony of Corporal Blake Walz ("Cpl.

Walz") and exhibits, including a video and audio recorded statement given by Smith at the time of his arrest. *See* Govt. Exhs. 1, 2, 3A, 3B, 4 & 5. The defense offered testimony of Sergeant Michael Smith ("Sgt. Smith") with the City of Normandy Police Department and Kathy Tracy, the City of Normandy Custodian of Records. Both defense witnesses appeared pursuant to a duly issued subpoena. At the close of the hearing on December 17th, the undersigned heard oral arguments from counsel for both parties and took Smith's pretrial motion under submission.

After carefully considering the written submissions of the parties, the arguments of counsel at the hearing, and the record as a whole, I make the following findings of facts and conclusions of law.

I. **FACTUAL FINDINGS**

These factual findings are predicated primarily on the testimony of Cpl. Walz and, to a lesser extent, testimony by Sgt. Smith. Both Cpl. Walz and Sgt. Smith were credible witnesses. Although the undersigned found Kathy Tracy also to be a credible witness, her testimony, which was confined to the manner in which the City of Normandy handled dispatch and other administrative matters, had no probative value to the issues before the Court.

In the early morning hours of July 17, 2016, Cpl. Walz was canvassing an area in which an unrelated theft had been reported when he witnessed a vehicle run a stop sign near Ellington and Bermuda roads in Normandy. Cpl. Walz turned on his lights and siren to curb the vehicle and the vehicle eventually pulled into a driveway on Ellington. Cpl. Walz pulled his patrol car into the driveway behind the curbed vehicle. As he did so, he observed an individual later identified as Smith step out of the driver's side of the car, lean back into the driver's side of the car, and toss a large black object through the opened passenger window. In addition to seeing a large black object fly through the opened passenger window, Cpl. Walz heard a large thunk which he likened to the sound of something metallic hitting concrete.

At that point, Cpl. Walz believed Smith threw a firearm, and he ordered Smith to put his hands on the vehicle. Although Smith did not place his hands on the vehicle as Cpl. Walz ordered, Smith held his hands in the air saying "nothing happened." Cpl. Walz radioed for assistance, and additional officers, including Sgt. Smith, arrived within two to three minutes to assist Cpl. Walz. Cpl. Walz handcuffed Smith and placed him in the back of one of the other officer's patrol car that was equipped with a cage.

Once Smith was handcuffed and placed in the cage of a patrol car, Cpl. Walz searched for the thrown object and found a firearm within ten to fifteen feet from the car. Thereafter, Cpl. Walz obtained Smith's pedigree information and determined that Smith had a revoked driver's license and was a previously convicted felon who was prohibited from possessing firearms. Smith was then transported to the Normandy Police Department.

Sgt. Smith credibly testified that when he arrived at the scene, Cpl. Walz was already in the process of placing Smith under arrest. Sgt. Smith was present when the firearm was discovered near the car, but he was not personally involved in its search or seizure.

Once Smith arrived at the Normandy Police Department, Cpl. Walz issued traffic citations to Smith for driving while revoked and for failing to stop at the stop sign. *See* Govt. Exhs.3A and 3B. Cpl. Walz also interviewed Smith about the gun he found at the scene. The interview, which was video and audio recorded, began shortly before 4 A.M. on July 17, 2016. Before beginning the interview, Cpl. Walz presented Smith with a Miranda Warning and Waiver form, which he reviewed with Smith. *See* Govt. Exhs. 1 and 2. Initially, as Cpl. Walz went over the rights enumerated on the form with Smith, Smith started to place his initials next to each right but then he scratched off his initials saying "we don't even need to worry about *Miranda* stuff." *See* Video of Smith Interview, Govt. Exh. 4. Smith indicated he understood his rights and after Cpl. Walz told him he wanted a written acknowledgement that Smith knew and understood his rights, Smith re-initialed and signed a second Miranda Warning and Waiver

form. *See* Govt. Exh. 2. At approximately 4:09 AM, Smith asked for an attorney and Cpl. Walz immediately stopped the interview and transferred Smith into custody.

During the course of the interview, Smith made various statements to Cpl. Walz, none of which appear to be incriminating. Cpl. Walz did not make threats or promises, draw his weapon, or engage in strong-arm or deceptive tactics during the interview. Smith made clear he was familiar with his rights at the start of the interview and, while the interview lasted, Smith appeared to be alert, coherent, and relatively at ease. *See* Govt. Exh. 4.

## II. CONCLUSIONS OF LAW

Smith moves to suppress the firearm that was seized and statements he made following the traffic stop on July 17, 2016, on grounds that they were obtained in violation of his rights under the Fourth and Fifth Amendments of the United States Constitution. *See* Doc. 25. Specifically, Smith disputes Cpl. Walz's version of events, denies he committed any traffic violation, and disputes there was any probable cause justifying the traffic stop. *Id.* As such, Smith contends all evidence and statements obtained following the stop should be suppressed as fruit of the poisonous tree. *Id.* Based on the foregoing factual findings, and for the reasons set out below, Smith's motion lacks merit and should be denied.

### A. SMITH'S FOURTH AMENDMENT RIGHTS WERE NOT VIOLATED

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The decision to stop an automobile is generally reasonable where the police have probable cause to believe that a traffic violation has occurred. *United States v. Gunnell,* 775 F.3d 1079, 1083 (8th Cir. 2015) (internal quotation marks omitted). Detention for a traffic violation "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v.*

*Jones*, 269 F.3d 919, 924 (8th Cir. 2001) (quoting *Florida v. Royer,* 460 U.S. 491, 500 (1983)). As such, "once an officer finishes the tasks associated with a traffic stop, the purpose of the traffic stop is complete and further detention. . . would be unreasonable unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention." *Gunnell,* 775 F.3d at 1083-84 (quoting *United States v. Ovando-Garzo*, 752 F.3d 1161, 1163-64 (8th Cir. 2014)). "Whether a detention is reasonable is a fact-intensive question which is measured in objective terms by examining the totality of the circumstances." *Id.* at 1084.

In *Terry v. Ohio,* 392 U.S. 1, 28-31 (1968), the Supreme Court held that investigatory stops— i.e., brief seizures by police that fall short of traditional arrests—are also reasonable and lawful if justified by a reasonable suspicion that an individual is engaged in criminal activity and if police activities during the investigatory stop are reasonably related to the circumstances that initially justified the stop. *See also Rodriguez v. United States,* 135 S. Ct. 1609, 1615 (2015). "Reasonable suspicion requires that the officers' suspicion be based upon particularized objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime has been committed." *United States v. Smith,* 648 F.3d 654, 658 (8th Cir. 2011) (internal citations omitted). An "inchoate and unparticularized suspicion or hunch" is insufficient. *Terry,* 392 U.S. at 27 (internal quotation marks omitted). In determining whether the requisite degree of suspicion exists, the court must determine whether the facts collectively establish reasonable suspicion and not whether each particular fact establishes reasonable suspicion—the whole picture, i.e., the "totality of the circumstances" must be taken into account. *See United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002); *United States v. Jones*, 269 F.3d 919, 927 (8th Cir. 2001). The court may consider any added meaning that certain conduct might suggest to experienced officers in the field, but the officer's reasonable suspicion cannot be "just a mere hunch or based on circumstances which 'describe a very large category of presumably

innocent [people].'" *Jones,* 269 F.3d at 927 (quoting *Reid v. Georgia,* 448 U.S. 438, 441 (1980)).

In conducting either a warrantless arrest supported by probable cause or an investigatory detention supported by reasonable suspicion, officers may, without violating the Fourth Amendment, take measures that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Newell,* 596 F.3d 876, 879 (8th Cir. 2010) (quoting *Terry,* 392 U.S. at 25-31). "[W]hen officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." *Smith,* 648 F.3d at 654 (quoting *United States v. Fisher,* 364 F.3d 970, 973 (8th Cir. 2004)).

Applying these legal principles to the foregoing factual findings, it is clear that Cpl. Walz had probable cause to believe Smith committed a traffic violation when he saw him fail to stop at a stop sign. As such, Cpl. Walz was authorized to detain Smith for as long as it took to issue a traffic citation. It is equally clear that, as Cpl. Walz began to approach Smith, something occurred that "generated the necessary reasonable suspicion to justify further detention" beyond the reasons for the traffic stop. *Gunnell,* 775 F.3d at 1083-84. Specifically, Cpl. Walz saw Smith throw an object he believed to be a firearm out of the passenger window.

Cpl. Walz's actions after Smith threw the object were reasonable and consistent with Smith's Fourth Amendment rights. Cpl. Walz commanded Smith to place his hands on the vehicle and eventually handcuffed Smith for safety reasons. He then placed Smith in a patrol car at the scene while he searched for the object that had been thrown. Upon discovering a firearm a mere ten to fifteen feet from the car, Cpl. Walz inquired into Smith's pedigree and discovered Smith had been driving with a revoked license and was a previously convicted felon who was not eligible to possess a firearm.

Notwithstanding Smith's assertions to the contrary, none of the evidence offered by Smith

rebutted Cpl. Walz's credible testimony regarding the sequence of events on July 17, 2016. In fact, the testimony of Sgt. Smith, who was summoned by Smith to testify for the defense, tended to corroborate rather than controvert Cpl. Walz's account of what transpired.

Smith's motion to suppress the firearm fails for the additional reason that the factual findings set out above establish that the firearm was abandoned by Smith when he threw it out of the passenger window during a lawful traffic stop. The warrantless seizure of abandoned property does not violate the Fourth Amendment because individuals who voluntarily abandon property forfeit any expectation of privacy they might have had in that property. *See United States v. Segars*, 31 F.3d 655, 658 (8th Cir. 1994) (citing *Abel v. United States,* 362 U.S. 217, 241 and *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir. 1983)). "In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property." *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999) (citing *United States v. Landry,* 154 F.3d 897, 899 (8th Cir. 1998)). In addition, "[w]hether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *Id.* (quoting *United States v. Tugwell,* 125 F.3d 600, 602 (8th Cir. 1997)). However, "[t]o fall outside of Fourth Amendment protection, a defendant's abandonment of evidence cannot be the product of unlawful police conduct." *United States v. Koessel,* 706 F.2d 271, 274 (8th Cir. 1983); *see also Segars*, 31 F.3d at 658 (citing *Koessel,* 706 F.2d at 274).

Here, the objective facts available to Cpl. Walz were that, as Cpl. Walz approached Smith in connection with a traffic stop, Smith threw an object out of the passenger window of his car that Cpl. Walz believed to be a gun based on the size and color of the object, as well as the sound it made when it hit the concrete pavement. When Cpl. Walz searched the area near Smith's car, he indeed found a gun

approximately ten to fifteen feet from the car. Based on the objective facts available to the investigating officer, Smith clearly abandoned the gun as police approached his vehicle during a traffic stop. For the reasons previously set out, Smith's abandonment of the gun was not the product of unlawful police conduct. From the moment Cpl. Walz turned on his lights and initiated a traffic stop he had probable cause to believe Smith committed a traffic violation. Smith's decision to toss what appeared to the officer to be a firearm out of his car during the course of a lawful traffic stop provided an additional and independent basis for police to stop and seize him.

In sum, because neither the initial stop of Smith, nor his subsequent detention violated the Fourth Amendment, Smith's motion to suppress the firearm and any statements made following his arrest should be denied.

### B. SMITH'S FIFTH AMENDMENT RIGHTS WERE NOT VIOLATED

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 448-450, 455 (1966), the Supreme Court recognized that custodial interrogations have the potential to undermine the privilege conferred by the Fifth Amendment against self-incrimination by possibly exposing a suspect to physical or psychological coercion. To guard against such coercion, the Court established a prophylactic procedural mechanism that requires a suspect to receive a warning before any custodial interrogation begins. *Id.* at 444. However, the privilege against self-incrimination can be waived. *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). To establish a valid waiver, the Government must demonstrate by a preponderance of the evidence that "the waiver was knowing, intelligent, and voluntary[.]" *Id.*

The standard for determining the voluntariness of either a waiver of *Miranda* rights and/or a statement is the same. *Colorado v. Connelly,* 479 U.S. 157, 169-70 (1986). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the

8

defendant's will and critically impair his capacity for self-determination." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011) (quoting *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004)). This determination must be made by looking at the totality of the circumstances, including both "the conduct of the officers and the characteristics of the accused." *Id.* Factors include, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Boslau*, 632 F.3d at 428 (quoting *Sheets v. Butera,* 389 F.3d 772, 779 (8th Cir. 2004)). Although "[t]he government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary," *LeBrun,* 363 F.3d at 724, "cases in which a defendant can make a colorable argument that a self- incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty,* 468 U.S. 420, 433 n. 20 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

Looking at the totality of the circumstances surrounding Smith's waiver of his *Miranda* rights and subsequent statement, the United States has met its burden of establishing that Smith's statement was voluntary. The evidence is clear and not disputed by Smith that, before interviewing Smith, Cpl. Walz advised Smith of his *Miranda* rights. Only after Smith acknowledged his *Miranda* rights did Cpl. Walz conduct a video recorded interview of Smith. Smith made clear he was familiar with his rights at the start of the interview and, while the interview lasted, Smith appeared to be alert, coherent, and relatively at ease. During the interview, Smith made various statements to Cpl. Walz, none of which appear to be incriminating. Cpl. Walz did not make threats or promises, draw his weapon, or engage in strong-arm or deceptive tactics during the interview. Cpl. Walz immediately stopped the interview when Smith stated he wanted an attorney.

In sum, there is no credible evidence of record to support a finding that Smith's post-arrest statements were coerced or involuntary or that Smith's Fifth Amendment Right against self-incrimination was otherwise violated. As such, Smith's motion to suppress post-arrest statements should be denied.

### III. CONCLUSION

For all of the foregoing reasons, Smith's Motion to Suppress Evidence and Statements (Doc. 25) should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Merwin Smith's Motion to Suppress Evidence and Statements (Doc. 25) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set before the **Honorable John A. Ross** on **March 4, 2019, at 9 a.m.**

Dated January 10, 2019.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE